## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| BEMER USA, LLC, | ) |
| Plaintiff, | ) Civil Action No.: 8:21-cv-00948 |
| v. | ) |
| GEORGE GASICH, | ) |
| YOUCEF BENLOUCIF, AND | ) |
| CENTROPIX USA, LLC | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND SUPPORTING MEMORANDUM OF LAW[1]

## I.    SUMMARY OF THE MOTION

Plaintiff BEMER USA, LLC ("BEMER" or "Plaintiff") brings this motion to restrain the unlawful conduct of George Gasich ("Gasich") and Youcef Benloucif ("Benloucif") (collectively, the "Individual Defendants"), former independent distributors of BEMER products, and Centropix USA, LLC ("Centropix"), a BEMER knock-off Gasich and Benloucif created to compete with BEMER.  In creating Centropix, Gasich and Benloucif have violated contractual duties of confidentiality, non-competition, and non-solicitation they owe BEMER by using and disclosing BEMER's Confidential Information, competing with BEMER through Centropix, and soliciting BEMER's customers and independent-contractor distributors to join Centropix.  **Indeed, BEMER has just learned that Gasich and**

---

[1] BEMER USA, LLC's Complaint is fully incorporated by reference into this Motion.

Benloucif both improperly accessed on of BEMER's private, password protected web portals, after their departure, in order to take and use some of BEMER's most confidential and important trade secret information to unlaefully compete with BEMER and poach its distributors and customers. Gasich, Benloucif, and Centropix (collectively, "Defendants") have committed tortious interference and trade-secret misappropriation under Florida and federal law by, respectively, interfering with BEMER's contracts with its independent contractors and using and disclosing BEMER's trade secrets. Thus, to prevent Defendants from irreparably injuring BEMER, the Court should issue the temporary restraining order requested herein.

BEMER would have brought this action sooner if Defendants had not concealed their unlawful actions by, among other things, surreptitiously accessing BEMER's confidential information after separating from BEMER and utilizing non-disclosure agreements to hide their misdeeds. However, because of this concealment, BEMER has only recently become aware of the extent of Defendants' unlawful acts. **Moreover, expedient injunctive relief is necessary here because the Defendants are launching their company on Saturday, April 24, 2021**. BEMER has not delayed in bringing this action, and there is a real and imminent threat that BEMER will suffer irreparable harm if the Defendants are not enjoined before the launch.

2

## II.    FACTUAL BACKGROUND

**A.    BEMER is a successful direct-sales, medical-device company that has substantially invested in its independent distributors.**

As explained in detail in the Complaint for Injunctive Relief (the "Complaint"), which is fully incorporated herein by reference,[2] BEMER is a direct-sales company that sells the BEMER device.  Because BEMER is a direct-sales company, BEMER relies on Independent BEMER Distributors ("IBDs") to develop and maintain client relationships and sell the products.  Additionally, because the BEMER device is a FDA-cleared Class II medical device, IBDs receive training on the science behind the BEMER device so that they can explain the device to potential clients.  IBDs also receive access to BEMER's Confidential Information and trade secrets to help them sell BEMER products and to operate and oversee their downlines.[3]

An agreement ("IBD Agreement") defines and governs IBDs' relationships with BEMER.  Ex. 1.  In exchange for IBDs' promises in the IBD Agreement and BEMER's Policies and Procedures ("Policies and Procedures"), Ex. 2, IBDs receive access to and the right to use BEMER's Confidential Information during the term of

---

[2] BEMER hereby incorporates the entire Complaint, and the verification thereof, herein.

[3] An individual's "Downline" shall mean those distributors that were recruited by the individual to join BEMER, and those distributors who joined BEMER after the individual did and whose sales or referrals generate income for that individual.

ACTIVE:13210573.1

the IBD Agreement, the right to compensation pursuant under the BEMER Compensation Plan, the right to market and sell BEMER products, the right to recruit IBDs and customers, and the right to attend leadership training and corporate events. *See* Ex. 1 § 7; Ex. 2, § 2.B.

**B.     Gasich and Benloucif were successful IBDs.**

As explained in the Complaint, Gasich and Benloucif became IBDs in 2015 and experienced success at BEMER.  Indeed, between 2016 and 2020 Gasich and Benloucif each earned seven figures.

**C.     Gasich and Benloucif agreed to confidentiality, non-solicitation, and non-competition duties to BEMER.**

As explained in the Complaint, Gasich and Benloucif each consented to the IBD Agreement and Policies and Procedures.  These agreements contain a six-month non-compete provision, a year-long non-solicitation provision, and require IBDs to refrain from using or disclosing "Confidential Information" during and after their employment.[4]  Compl. ¶¶ 25–32.  Gasich and Benloucif agreed that the covenants in the IBD Agreement were reasonable and that BEMER would not have to post bond if it sought injunctive relief "to enjoin the IBD from beaching or threatening to breach such covenants."  Ex. 2, § 10.B.9.  And the section of the Policies and Procedures containing the non-compete provisions explains that "[a]ny violation of

---

[4] For purposes of this motion, "Confidential Information" shall be defined as it is in Ex. 1, § 7 of the Complaint.

4

this section shall constitute unreasonable and unwarranted contractual interference between BEMER and its IBDs and would inflict irreparable harm on BEMER." *Id.*, § 3.O.10.

**D.    Under the IBD Agreements Gasich and Benloucif Gained Access to BEMER's Confidential Information.**

As explained in the Complaint, in exchange for the promises within the IBD Agreement, BEMER gave Gasich and Benloucif access to BEMER's Confidential Information. This information includes, but is not limited to, information about IBDs and their sales and BEMER's business plans and strategies. BEMER also provided specialized training to Gasich and Benloucif. *Id.*

BEMER has expended significant time, effort, and money developing and protecting its Confidential Information. *Id.* ¶ 37. The Confidential Information derives its value from not being generally known to, and not being readily ascertainable by, other persons who could obtain economic value from that information. *Id.* ¶ 38. Furthermore, knowing this information would provide an unfair advantage to a competitor of BEMER. *Id.*

BEMER has also taken reasonable steps to protect its Confidential Information. Namely, BEMER protects its Confidential Information by utilizing passwords, limiting access to the information to IBDs during their relationship with BEMER after the IBDs have agreed to abide by the IBD Agreement and Policies and Procedures, and limiting access to particularly sensitive information to higher

ACTIVE:13210573.1

ranked IBDs.  *Id.* ¶ 39.

**E.     Gasich and Benloucif have breached the IBD Agreement, and Defendants have breached independent legal duties owed to BEMER.**

**1.     Gasich and Benoulcif breached and will continue to breach their non-competition obligations to BEMER.**

As explained in detail in the Complaint, while still IBDs, Gasich and Benloucif created Centropix which competes with BEMER, and although they attempted to hide their competitive activities, they are breaching their non-competition obligations to BEMER.  To conceal their unlawful acts, when Gasich and Benloucif began soliciting IBDs, they required the IBDs to sign non-disclosure agreements.  *Id.* ¶ 50.   However,   recently   Centropix   launched https://livepreview.centropix.com/, which shows that Centropix is marketing and selling a PEMF (a pulsed electromagnetic field) device called the BUBBLE in competition with BEMER.  Compl. ¶ 64.    As the image at paragraph 64 of the Complaint demonstrates, the fact that the BUBBLE is a PEMF device is so important to Centropix that Centropix uses the term "PEMF" and the phrase "pulse of magnetic field" in its description of the product.  Additionally, during a webinar that occurred on April 10, 2021, it wasconfirmed that Centropix is, like BEMER, a direct-selling company.  *Id.* ¶ 68.  BEMER has learned also that Centropix has copied, word-for-word, its IBD Agreement, even keeping in the original effective date of the BEMER Agreement, June 2020.  *Id.* ¶ 69.  Accordingly, Centropix is competing with BEMER

6

by copying BEMER's business model and compensation plan and selling a product that competes with BEMER's products.

> **2.      Gasich and Benloucif breached their non-solicitation obligations to BEMER, and Defendants tortiously interfered with BEMER's contracts with its IBDs.**

As explained in the Complaint, fully incorporated herein by reference, although Gasich and Benloucif tried to conceal their unlawful actions, they each admitted they had made or planned to make unlawful solicitations.  Specifically, Gasich admitted that he solicited IBDs during his relationship with BEMER, and Benloucif admitted that he planned to solicit at least one IBD in violation of his contractual obligations after leaving BEMER.  Compl. ¶¶ 59, 74.  And Gasich and Benloucif's hosting of the Webinar that occurred on April 10, 2021 was an improper solicitation because it promoted Centropix and was directed at IBDs.  *Id.* ¶¶ 92–97.

> **3.      Gasich and Benloucif breached their confidentiality obligations, and Defendants Misappropriated BEMER's Trade Secrets.**

As explained in the Complaint, fully incorporated herein by reference, Benloucif and Gasich have violated their confidentiality obligations by. After their termination (1) accessing BEMER.net, which is private and password protected likely for the purpose of taking Confidential Information stored in the database; and (2) accessing BEMER's confidential training materials.  *Id.* ¶¶ 78, 79, 83, 86, 88, 89.  Centropix is utilizing BEMER's confidential information to solicit IBDs and train its distributors.  *Id.* ¶ 90.

ACTIVE:13210573.1

## III.    MEMORANDUM OF LAW

BEMER seeks injunctive relief under the Federal Rule of Civil Procedure 65, the Local Rule 4.05 of the Middle District of Florida, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3) *et seq.*, the Florida Uniform Trade Secrets Act, § 688.001, *et seq.*, Fla. Stat., and Florida Statute § 542.335, which govern the enforcement of restrictive covenants.   A request for a temporary restraining order is evaluated by the same factors that generally apply to a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) an irreparable injury in the absence of the requested order; (3) a threatened injury that exceeds any injury to the non-moving party caused by the order; and (4) that public policy favors such an order.[5]

BEMER seeks injunctive relief because of the evidence discussed herein of (1) Gaisch's and Benloucif's continuing violations of their contractual duties to BEMER of confidentiality, non-competition, and non-solicitation, (2) Defendants' continuing tortious interference with BEMER's contracts with its IBDs, and (3) Defendants' continuing misappropriation of BEMER's trade secrets.   As described below, Defendants' actions will cause BEMER imminent and irreparable harm through the loss of its IBDs, business opportunities, and the value of BEMER's

---

[5] *Sierra Club v. United States Army Corps of Engineers*, No. 8:20-CV-287-T-36JSS, 2020 WL 3268228, at *2 (M.D. Fla. Mar. 16, 2020).

Confidential Information and trade secrets.

## A.      BEMER has shown a substantial likelihood of success on the merits.

BEMER is likely to succeed on the merits of its breach-of-contract, trade-secret misappropriation, and tortious-interference claims.

### 1.      BEMER Will likely prevail on the merits of its claim for breach of contract against Gasich and Benloucif.

BEMER will prevail on the merits of its breach-of-contract claim against Gasich and Benloucif because the IBD Agreement, to which Gasich and Benloucif consented, contains enforceable restrictive covenants Gasich and Benloucif have violated and continue to violate.

To prevail on a breach-of-contract claim under Florida law, a plaintiff must show (1) a valid contract; (2) a material breach; and (3) damages.[6]  Under Florida Statute § 542.335, restrictive covenants are enforceable if an employer can prove: (1) the existence of one or more legitimate business interests justifying the restrictive covenant; and (2) that the contractually specified restraint is reasonably necessary to protect the interests of the employer.[7]  Legitimate business interests justify the restrictive covenants in the IBD Agreement.  Protectable business interests include

---

[6] *See, e.g.*, *Idearc Media Corp. v. Premier Limousine, LLC*, No. 8:08-CV-1695-T-30MAP, 2009 WL 482293, at *2 (M.D. Fla. Feb. 25, 2009).  As shown in Section III.A.1.a.iii on page 14 *supra*, Florida law governs BEMER's breach-of-contract claims against Gasich and Benloucif.

[7] *See, e.g.*, *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009); *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004).

ACTIVE:13210573.1

interests in protecting: (1) trade secrets; (2) valuable confidential information that does not otherwise qualify as a trade secret; and (3) substantial relationships with prospective or existing customers.[8]

Here, BEMER's interests in protecting its Confidential Information and relationships with its customers justify the restrictive covenants to which Gasich and Benloucif agreed.

The restrictive covenants are necessary to protect BEMER's legitimate interest in the secrecy of its Confidential Information. The IBD Agreement states,

> During the term of this IBD Agreement, BEMER grants you a personal, non-exclusive, non-transferable and revocable right to use certain Confidential Information that includes, without limitation, LOS information, business reports, manufacturing and product developments, and IBD sales, earnings and other financial reports to facilitate your BEMER business.

Ex. 1, § 7. The restrictive covenants protect BEMER's interest in the Confidential Information by prohibiting IBDs from disclosing Confidential Information to third parties, competing with BEMER for a reasonable period of time and therefore from using BEMER's Confidential Information against BEMER during that reasonable period, and soliciting IBDs and customers during a reasonable period of time and therefore from using BEMER' Confidential Information to solicit IBDs and customers during that reasonable period. Compl. ¶¶ 25–32.

---

[8] Fla. Stat. § 542.335(1)(b).

ACTIVE:13210573.1

The restrictive covenants also protect BEMER's legitimate interest in protecting its customer relationships.  One covenant prohibits IBDs from soliciting BEMER's customers to buy products from BEMER's competitors during a reasonable time period after their relationship with BEMER ends.  Ex. 2, § 3.O.4.  Additionally, the non-compete and prohibition on soliciting IBDs protects BEMER's interest in its customer relationships by, respectively, (1) preventing IBDs from attracting or attempting to attract BEMER's customers to products or ventures that compete with BEMER and (2) preventing IBDs from causing or trying to cause other IBDs to leave BEMER for competing ventures and taking their customer relationships, and BEMER's goodwill with their customers, to the competing ventures.

The restrictive covenants to which Gasich and Benloucif agreed are also reasonable.  Courts have found restrictions limited to one year post-termination to be reasonable.[9]  Courts have also found industry-specific restrictions to be reasonable.[10]  Here, the non-competition and non-solicitation provisions to which Gasich and Benloucif agreed apply for no more than one year and are limited to the

---

[9] *See, e.g.*, *Freedom Med., Inc. v. Sewpersaud*, 6:20-cv-771-Orl-37GJK, at *5 (M.D. Fla. June 23, 2020) (noting that "many courts" have found a restriction limited to one-year post-termination to be "reasonable.").

[10] *See, e.g.*, *Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281, 1291 (M.D. Fla. 2019) (granting an injunction based on a non-solicitation provision that was limited to "the business of pharmaceutical rebate management services").

ACTIVE:13210573.1

industry in which BEMER operates.

First, the non-compete and non-solicitation provisions are reasonable because they last for only six and twelve months respectively.  Second, the non-compete and non-solicitations are industry-specific.  *See* Ex. 2, § 3.O.6. (Non-compete provision prohibits selling of medical devices and products in the same category as a BEMER product); Ex. 1, § 9 (non-solicitation provision prohibiting solicitation "to compete with the business of BEMER").  Thus, because the non-compete and non-solicitations provisions are appropriately time-limited and industry specific, they are reasonable.

Next, BEMER provided consideration and performed under the IBD Agreement.  Under the IBD Agreement, BEMER provided Gasich and Benloucif at least with (1) payment according to the BEMER compensation plan for selling BEMER products and recruiting IBDs to BEMER, (2) valuable Confidential Information, and (3) training.  Compl. ¶ 21.  Unless the Court grants the injunctive relief requested herein, BEMER will be deprived of the benefits of its bargain—a bargain Gasich and Benloucif exploited to collect millions of dollars in commission payments from BEMER.

              a. **Gasich and Benloucif have violated and will continue to violate their non-competition obligations unless the Court intervenes.**

Gasich and Benloucif are competing with BEMER, and they intend to

continue doing so in violation of their contractual obligations.  BEMER sells PEMF
devices.  *Id.* ¶ 14.  Centropix is competing with BEMER by marketing a product that
it calls the BUBBLE, which Centropix claims is "the [w]orld's [s]mallest PEMF
[d]evice."  *Id.* ¶¶ 64–66.  Unless this Court enjoins the Individual Defendants from
competing with BEMER, BEMER will lose business because of the Individual
Defendants' unlawful competition.  *Id.* ¶¶ 111–14.

> **b.   Gasich and Benloucif have violated and will continue to
> violate their non-solicitation obligations unless the Court
> intervenes.**

The Individual Defendants have solicited IBDs in violation of their
contractual obligations intend to continue doing so.  First, Gasich admitted to
soliciting IBDs during his relationship with BEMER on January 29, 2021 during his
meeting with Bosch and he stated that he intended to continue soliciting his
personally enrolled IBDs.  Compl. ¶¶ 54–56.  Benloucif also admitted to planning
to solicit an IBD after his departure from BEMER.  *Id.* ¶ 60.  As described in the
Complaint, Gasich and Benloucif continued violating their non-solicitation
obligations by, among other things, speaking during the webinar on April 10, 2021
even though invitations to the webinar were sent to IBDs, and the webinar attempted
to appeal to IBDs by, for example, mentioning BEMER multiple times.  *Id.* ¶ 97.

BEMER attempted to avoid litigation and demanded that the Defendants
comply with their contractual obligations and the law.  But communications between

ACTIVE:13210573.1

the parties reached an impasse.  Accordingly, because Centropix has stated it is launching on April 24, 2021, BEMER must seek immediate injunctive relief.  Unless this Court enjoins the Individual Defendants from soliciting IBDs, BEMER will continue to lose IBDs because of the Individual Defendants' unlawful solicitations.

> **c.    Gasich and Benloucif have violated and will continue to violate their confidentiality obligations unless the Court intervenes.**

As explained in the Complaint, Gasich and Benloucif are using BEMER's Confidential Information to compete with BEMER in violation of their contractual obligations.  First, the Individual Defendants are utilizing information they learned from BEMER about the sales and performance of IBDs to solicit BEMER's most successful IBDs and to tailor solicitations to such IBDs.  *Id.* ¶ 77.  Second, although it has been more than a month since Gasich resigned, he accessed Confidential Information BEMER uses to train its IBDs just last week.  *Id.* ¶¶ 78, 83, 88, 89. Third, Gasich and Benloucif have accessed BEMER.net, since their departure from BEMER for the likely purpose of collecting BEMER's Confidential Information to further Centropix.  Unless this Court enjoins the Individual Defendants from using BEMER's Confidential Information, BEMER will lose the value of the Confidential Information.

> **2.    BEMER Will Likely Prevail on the Merits of its Claim for Misappropriation of Trade Secrets.**

Under Fla. Stat. § 688.001 *et seq.*, a trade-secret misappropriation claim

requires that (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy, and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it.[11]   Further, the proposed trade-secret information "must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy" and must not be generally known or readily accessible to third parties.[12]   Due to the similarity between the Florida Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, under both of which BEMER has alleged claims against the Defendants, claims under each of these statutes "can be analyzed together."[13]

As explained above and in the Complaint, BEMER has valuable trade-secret information it protects through the confidentiality provisions in the IBD Agreement, the use of passwords, and limiting access to such trade-secret information.  Compl. ¶¶ 39, 134.   BEMER's trade-secret information includes, but is not limited to, information concerning: the names and contact information for its IBDs, including

---

[11] *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002).

[12] *See id.* (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law)).

[13] *Freedom Med., Inc. v. Sewpersaud*, No. 6:20-cv-771-Orl-37GJK, 2020 WL 3443837, at *3 (M.D. Fla. June 23, 2020), *order clarified*, No. 6:20-cv-771-Orl37GJK, 2020 WL 3487642 (M.D. Fla. June 25, 2020).

ACTIVE:13210573.1

their addresses, phone numbers, sales performance; how many other IBDs have enrolled, and how much compensation IBDs receive; customized reports relating to IBDs' metrics, searchable according to various key performance indicators; and Manager meeting videos that discuss, among other things, BEMER's confidential sales training and business building strategies and plans, strategies that have succeeded in different regions and with different teams, strategies for team development, and marketing strategies. *Id.* ¶ 36.

Such trade-secret information is not readily ascertainable because BEMER has invested substantial resources into the development of its trade-secret information. *Id.* ¶¶ 37–38. Were a competitor to gain access to this trade-secret information, the competitor would gain a competitive advantage over BEMER because it could pursue the same business opportunities at a lower cost because the competitor did not have to invest in the development of the trade-secret information. *Id.* ¶ 38.

Gasich and Benloucif acquired the trade secrets through their association with BEMER, and Centropix acquired the trade secrets via Gasich's and Benloucif's association with BEMER. Moreover, Defendants were, and are, aware that using and disclosing BEMER's trade secrets violates Gasich's and Benloucif's duties to maintain the trade secrets' secrecy. *Id.* ¶¶ 136–40. Indeed, after Gasich and Benloucif's departure from BEMER, BEMER sent Gasich and Benloucif

ACTIVE:13210573.1

correspondence reminding them of their continuing contractual obligations to BEMER.  Later, on April 13, 2021, more than two months after Gasich's resignation, Gasich unlawfully accessed Confidential Information BEMER developed to train its IBDs and that BEMER provides only to "Academy Directors" within BEMER.  *Id.* ¶¶ 40–47, 78.  The only reason Gasich would access this information would be to use the information for Centropix's benefit.  Likewise, both Gasich and Benloucif accessed BEMER's Confidential Information through BEMER.net after their departures for the likely purpose of utilizing the information kept there for Centropix's benefit.  Accordingly, Defendants are utilizing BEMER's Confidential Information about its IBDs and unlawfully taking it for purposes of training Centropix distributors.

Defendants' retention and use of BEMER's Confidential Information to benefit Centropix constitutes misappropriation of trade secrets.  Furthermore, Defendants are using BEMER's trade-secret information in interstate commerce by soliciting distributors located outside of Florida, such as, Judy Laufer.  *See id.* ¶ 95.  Defendants' illegal misappropriation will cause BEMER to lose: (1) the value of trade secrets BEMER has expended extensive time, effort, and money to create; (2) business opportunities developed and protected by BEMER; and (3) BEMER's IBDs, whom BEMER has trained and with whom BEMER has shared its trade-secret information.  BEMER's business opportunities, trade secrets, and distributors are

17

essential to BEMER's operations. *Id.* ¶¶ 32, 38, 142, 156. Accordingly, Defendants' actions constitute actual misappropriation, and there is a threat of further misappropriation because of Defendants continued use of such information.

### 3. BEMER will likely prevail on the merits of its Tortious-Interference Claim.

The elements of tortious interference under Florida law "(1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference."[14]   "[T]o determine whether interference is justified or privileged requires a commonsense consideration of whether the conduct was 'sanctioned by the rules of the game' and what is 'right and just' under the circumstances."[15]  BEMER is likely to prevail on all four elements.

First, business relationships and contracts exist because BEMER has contracts and business relationships with IBDs and BEMER customers.

Second, Defendants knew about BEMER's contracts and business relationships with IBDs and BEMER customers because (1) Gasich and Benloucif

---

[14] *Collier HMA Phys. Mgmt., Ltd. Liab. Co. v. NCH Healthcare Sys.*, No. 2:18-cv-408-FtM-38MRM, 2019 U.S. Dist. LEXIS 9902, at *22–23 (M.D. Fla. Jan. 22, 2019).

[15] *Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013).

ACTIVE:13210573.1

knew from their access to BEMER's Confidential Information who BEMER's IBDs and customers were and (2) the IBDs Gasich and Benloucif solicited were among BEMER's most successful IBDs.  Compl. ¶ 77.

Third, Defendants intentionally and unjustifiably interfered with BEMER's business relationships with IBDs and caused IBDs to breach their contracts with BEMER.  As stated in the Complaint, BEMER has recently lost 8 of its top distributors that achieved the rank of "Group Leader" or above, and experience almost a dozen lower-level resignations, each of which BEMER believes have been caused by IBDs leaving BEMER for Centropix.  *Id.* ¶ 76.  Defendants intended for these IBDs to leave BEMER because they desired for the IBDs to join Centropix. And the Defendants' interferences were unjustified because the interferences violated Defendants' contractual obligations to BEMER and were neither "sanctioned by the rules of the game" nor "right and just" in the circumstances. *Bluesky*, 985 F. Supp. at 1367.

Fourth, Defendants' interferences with BEMER's contracts and business relationships with IBDs continue to damage BEMER.  Namely, poached IBDs are likely recruiting their Downlines to join Centropix, which will result in the loss of additional IBDs and the potential loss of the customer relationships those IBDs manage.  *Id.* ¶¶ 32, 109, 114.

**B.     There is a substantial threat that BEMER will suffer irreparable injury.**

ACTIVE:13210573.1

Under Florida law, "irreparable harm is presumed when a party appropriates or intends to appropriate trade secrets for its own use or the use of another unauthorized party."[16]   BEMER will suffer imminent and irreparable injury if the Court does not enjoin Defendants from (1) using BEMER's Confidential Information and trade-secret information and (2) competing with BEMER and soliciting BEMER's IBD's and customers in violation of contractual and independent legal obligations.

A real and immediate threat exists that Defendants will use BEMER's Confidential Information and trade secrets to solicit and recruit IBDs and BEMER customers and divert business from BEMER to BEMER's detriment so as to benefit of Defendants, who are now competitors of BEMER.   If the Court does not enjoin Defendants as requested herein, BEMER will lose: (1) the value of its trade secrets that BEMER has expended time, effort, and money to create; (2) business from the BEMER distributors whom Defendants have recruited and will recruit; and (3) valuable business opportunities BEMER has expended extensive time, effort, and money to identify.  *Id.* ¶ 128. The IBDs, business opportunities, and trade secrets Defendants will plunder absent relief from this Court are essential to BEMER's operations and competitive advantage in the marketplace.  *Id.* ¶ 38.

---

[16] *Confianca Moving, Inc. v. De Oliveira*, No. 10-23035-CIV, 2011 WL 13269500, at *6 (S.D. Fla. Jan. 24, 2011).

ACTIVE:13210573.1

Unless the Court enjoins Defendants and all others through or with whom they are acting, BEMER will suffer irreparable injury and harm for which it lacks an adequate remedy at law.  Moreover, because the IBD Agreements are "governed by and construed in accordance with the laws of the State in which the IBD resided at the time at which the alleged cause or causes of action first arose" and because BEMER has demonstrated the violation of enforceable non-competition and non-solicitation covenants, BEMER is entitled to a presumption of irreparable injury.[17] **This threat is pressing because Centropix plans to launch on April 24, 2021**.

The damages caused by Defendants' wrongdoing are not quantifiable and will likely be unrecoverable, which leaves BEMER with no adequate legal remedy. Courts frequently recognize the difficulties in calculating the harm to a company caused by departing sales associates, employees, or distributors who leave the company to work for a competitor.[18]  Here, the harm to BEMER resulting from high-ranking distributors that possess BEMER's Confidential Information leaving

---

[17] *Accuform Mfg., Inc. v. Nat'l Marker Co.*, No. 8:19-cv-2220-T-33AEP, 2020 WL 1674577, at *9–10 (M.D. Fla. Jan. 13, 2020) ("Under Florida law, 'the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant.'") (quoting Fla. Stat. § 542.335)).

[18] *See, e.g.*, *Johnson Controls, Inc. v. Rumore*, No. 8:07-cv-1808-T-17TBM, 2008 U.S. Dist. LEXIS 4310, at *43  (M.D. Fla. 2008) ("[T]he measure of it damages in monetary terms due to the loss of key employees who suddenly began working for a competitor . . . is not easily quantifiable in monetary terms nor is the loss of competitive advantage experienced when a former key employee, possessed of proprietary or confidential information, begins using such knowledge in bidding against it.").

ACTIVE:13210573.1

BEMER to work for a competitor of BEMER and recruiting others to do the same is not quantifiable in monetary terms. Compl. ¶¶ 32, 111–12.

Likewise, the anticipated harm from Gasich's and Benloucif's breaches of their confidentiality obligations is irreparable because no remedy at law exists that will compensate BEMER for the harm the loss of BEMER's Confidential Information to a competitor will cause BEMER. Such information would lose its economic value to BEMER because the Confidential Information's value is derived from the fact that it is not generally known. *Id.* ¶149. Additionally, once Gasich and Benloucif share BEMER's Confidential Information with competitors like Centropix, the Confidential Information could lose the trade-secret protections it currently has.

Furthermore, the Defendants' deceptive acts, including, but not limited to, their use of non-disclosure agreements, *id.* ¶¶ 50–51, demonstrate that Defendants will likely destroy pertinent data upon being served with notice of this legal action. If Defendants destroy data about this matter, BEMER will likely lose its ability to prove Defendant's wrongful acts and, consequently, its ability to stop further bad acts. Accordingly, this Court should issue a temporary restraining order prohibiting the destruction of such data about this matter.

**C.      The harm threatened outweighs any harm the injunction would cause.**

Without an injunction, BEMER faces irreparable harm from Defendants'

ACTIVE:13210573.1

threat of disclosure and use of BEMER's trade secrets, the consequential threat of continued injury to BEMER's business and customer relations, and the loss of additional IBDs.  In contrast to the irreparable harm faced by BEMER, the only harm Defendants face is that they will be enjoined from engaging in activities they agreed not to perform.[19]

## D.      Granting a temporary restraining order would serve the public interest.

The public interest will be served by granting an injunction in this case, as that relief will protect BEMER's investment in its trade secrets and Confidential Information and uphold and promote the integrity and validity of binding contracts under Florida law.[20]

## E.      A nominal bond should be required.

Courts have discretion to waive the bond requirement if the movant has demonstrated a high probability of succeeding on the merits or the enjoined party is unlikely to incur significant damages because of the injunction.  *See, e.g.*, *Tancogne v. Tomjai Enters. Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005).   The

---

[19] *See Autonation*, 347 F. Supp. 2d at 1308 ("[C]onsidering that O'Brien agreed to the Non–Compete Agreement and that such agreement was a condition of O'Brien's compensation and employment. . . the relative harm between the parties weighs in favor of issuing an injunction.").

[20] *See 7-Eleven, Inc. v. Kapoor Bros., Inc.*, 977 F. Supp. 2d 1211, 1230 (M.D. Fla. 2013) ("A preliminary injunction enforcing the restrictive covenants will serve the public interest, because enforcement of a valid restrictive covenant encourages parties to adhere to contractual obligations."); *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012) ("[A]n injunction would affirmatively serve the public interest by protecting businesses from employees who misappropriate their trade secrets.").

ACTIVE:13210573.1

Individual Defendants have waived the bond requirement. *See* Ex. 1, § 7 ("You agree that . . . BEMER shall be further entitled to seek injunctive relief without the necessity of posting a bond or other security.")  Accordingly, because BEMER has demonstrated a strong likelihood of success on the merits, Defendants are unlikely to suffer significant monetary losses or other harm from the relief sought, BEMER is asking only that Defendants be enjoined from engaging in activities they have already agreed not to perform and the Individual Defendants have waived the bond requirement, only a nominal bond of $500.00 should be required.

## IV.   CONCLUSION & PRAYER

BEMER requests that the Court grant its motion for a temporary restraining order, enter the attached proposed Temporary Restraining Order until a preliminary injunction hearing can occur, and order that a nominal bond of $500.00 should be required.

Dated: April 21, 2021                    Respectfully submitted,

<div style="margin-left: 3em;">

**GUNSTER, YOAKLEY & STEWART, P.A.**
401 E. Jackson Street, Suite 2500
Tampa, Florida 33602
Telephone:   (813) 228-9080
Facsimile:   (813) 228-6739
*/s/ John A. Schifino*
William J. Schifino, Jr., Esq.
Florida Bar Number 564338
John A. Schifino, Esq.
Florida Bar Number 72321
Jounice L. Nealy-Brown, Esq.
Florida Bar Number 124793

</div>

ACTIVE:13210573.1

Primary: wschifino@gunster.com
Primary: jschifino@gunster.com
Primary: jnealy-brown@gunster.com
Secondary: kkovach@gunster.com
Secondary: csanders@gunster.com
Secondary: tkennedy@gunster.com

WINSTON & STRAWN LLP
John C.C. Sanders, Jr.
Texas Bar No. 24057036
jsanders@winston.com
Katrina Eash
Texas Bar No. 24074636
Keash@winston.com
Hayden Duffy
Texas Bar No. 24097975
Hduffy@winston.com
William G. Fox, Jr.
Texas Bar No. 24101766
wfox@winston.com
2121 N. Pearl St., Suite 900
Dallas, Texas 75201
Telephone:  214-453-6500
Telecopy:    214-453-6400

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.  A copy of the foregoing also was emailed to:

Lawrence Steinberg, LSteinberg@buchalter.com
1000 Wilshire Boulevard, Suite  500,
Los Angeles, California 90017
*Counsel for Defendants*

/s/  John A. Schifino
Attorney for Plaintiff

25